UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

$8:06CV991-T23TBm$

UNITED STATES OF AMERICA,
*ex rel.*

TOM NOCERA                                    Civil Action No._____

Relator,                                      FILED IN CAMERA AND
                                              UNDER SEAL PURSUANT
                                              TO 31 U.S.C. § 3730(b)(2)

v.

THE MOSAIC
COMPANY a/k/a MOSAIC,
IMC GLOBAL, CARGILL CROP
NUTRITION a/k/a CARGILL FERTILIZER
a/k/a CARGILL PHOSPHATE
PRODUCTION a/k/a CARGILL,
LUCIER CHEMICAL INDUSTRIES, INC.
(LCI), AND AMERICAN WATER WORKS
ASSOCIATION (AWWA)

Defendants.

_____/

## COMPLAINT FOR DAMAGES AND OTHER RELIEF
## UNDER THE FALSE CLAIMS ACT

### JURISDICTION AND VENUE

1. This is an action to recover damages and civil penalties on behalf of the United States of

America arising out of false claims of "adequate testing" on chemical assays presented by

Defendants to the Department of Health and Rehabilitative Services, who administer the

1

"Federal Preventive Services Block Grant" through the PUBLIC HEALTH DENTAL

PROGRAM, and to municipalities and other government agencies.  Under the Safe Drinking

Water Act, the United States EPA also provides grants to implement state drinking water

programs, and to help each state set up a special fund to assist public water systems in financing

the costs of improvements (called the drinking water state revolving fund).

This action may cover claims that DEFENDANTS sold a product that was not safe for its

intended purpose and its benefits were misrepresented.

This action arises under the provisions of the Title 31 U.S.C. §3729, *et seq.* popularly known as

the False Claims Act, which provides that the United States District Courts shall have exclusive

jurisdiction of actions brought under the Act.

2.  Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) of the Act because it provides

that, "Any action under section 3730 may be brought in any judicial district in which the

Defendant or, in the case of multiple Defendants can be found, resides, transacts business, or in

which any act proscribed by section 3792 occurred." Some of the acts complained of herein

occurred in Pinellas County and St. Petersburg, Florida, within this judicial district.  Other acts

occurred in the Middle District of Florida.

3. Under the Act, this complaint is to be filed in camera and **remain under seal** for a period of at

least sixty (60) days and shall not be served on the Defendant until the Court so orders. The

Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the complaint and the material evidence and information.

## PARTIES TO ACTION

4. Qui Tam Relator TOM NOCERA is a citizen of the State of Florida and a homeowner of a 1950's built home in Pinellas County. He brings these actions on behalf of the United States of America. Hereinafter, he will be referred to as Relator.

5. As required under the False Claims Act, 31 U.S.C. 3730 (a)(2), Relator has voluntarily provided to the Attorney General of the United States and to the United States Attorney for the Middle District of Florida, simultaneous with the filing of this complaint, a statement of all material evidence and information related to the complaint. This disclosure statement supports the existence of "failure to test" and/ or "inadequate testing" and on chemical assays and false claims of "adequate testing" and false certification by the Defendants.

Further, it is believed that Defendants misrepresented the benefits of adding **fluorosilicic acid (H2SiF6)**, to drinking water to the federal, state, county, and municipal governments throughout the United States.

6. On June 1, 2005, Relator obtained seven (7) of the required chemical assay documents (Exhibits A-G) from the source of the fluorosilicic acid (bearing the names: Cargill Phosphate Production and Cargill Crop Nutrition, and address at: 8813 Highway 41 South, Riverview, Florida, 33569), which are purporting to be the contractually required, certified laboratory assays

3

showing the true lead and arsenic content of said load of **fluorosilicic acid (H2SiF6)**, and instead demonstrate evidence of either: 1) Errors of gross omission; or 2) of a criminal fraud (a reckless disregard or false certification) pertaining to the true levels of lead and/or arsenic and/or other toxic elements present in the "fluorosilicic acid" such as mercury and barium. Additionally, Relator obtained six (6) of the required chemical assay documents (Exhibits H-M) from Mosaic, which demonstrate similar evidence of gross omission (a reckless disregard or false certification) or criminal fraud.

7. Upon the Relator's belief and information, the fraudulent claims for "adequate testing" or "failure to test" or false certification of batches as hereinafter set out could possibly amount to a minimum of five thousand dollars ($5,000.00) and no more than a maximum of ten thousand dollars ($10,000) for each fraudulent assay claim, as well as reimbursement for the contract price of the Government paying for tests not performed or any re-testing of product made.

8. The United States of America ("U.S.") funds federal research and service delivery grants through the Department of Health and Rehabilitative Services, and through federally funded annual block grants, namely the "Federal Preventive Services Block Grant", The Public Health Dental Program administers this grant money to Mosaic, IMC Global, and Cargill to facilitate funding support in the fluoridation process in Pinellas County drinking water (2004) and the City of St. Petersburg's drinking water (prior to 2004). The aforementioned fertilizer companies utilize the substance known as "fluorosilicic acid", a hazardous toxic waste byproduct from the phosphate fertilizing process, to fluoridate the communities previously mentioned.

4

9. State of Florida, Public Health Dental Program, is located at the State Health Office on 1317 Winewood Blvd. in Tallahassee, Florida and conducts its affairs in the State of Florida, including the St. Petersburg area. (Exhibit O). At all material times, conducted its affairs in the State of Florida, including the St. Petersburg area. Defendants mislead PHDP into inducing many local counties and cities to add to its drinking **fluorosilicic acid (H2SiF6)** .

10. Defendants, IMC GLOBAL and CARGILL, merged in October 2004 to create MOSAIC, which is now one of the world's largest makers of phosphate and potash crop nutrients. MOSAIC is two-thirds owned by CARGILL and one-third owned by former IMC shareholders. Said entity, MOSAIC, and previous CARGILL subsidiaries (Cargill Phosphate Production) are located at 8813 Highway 41 South in Riverview, Florida and conducts its affairs in the State of Florida. At all material times, Defendant conducted its affairs in the State of Florida. It is believed that CARGILL and MOSAIC, at the time of the merger in 2004, continued the conspiracy to knowingly, intentionally, and recklessly defraud the United States Government and its regulatory agencies, as well as local utilities and municipalities, with their fraudulent assays depicting the false security of the safety of "fluorosilicic acid".

11. It is believed that the Defendant MOSAIC, formerly known as the entities of IMC Global and Cargill, either directed or encouraged LUCIER CHEMICAL INDUSTRIES, INC. (LCI) to market the toxic waste byproduct fluorosilicic acid, using the fraudulent (or improperly certified) chemical assays to unsuspecting local utility companies, namely Pinellas County Utilities, and other municipalities (including counties, cities, and other federal and state government entities)

5

since the fluoridation process began prior to 2004 in the City of St. Petersburg and in 2004 in Pinellas County, Florida.

12. Defendant, LUCIER CHEMICAL INDUSTRIES, INC. (LCI) since the fluoridation process began in Pinellas County and St. Petersburg, Florida, has knowingly, intentionally, and recklessly conspired with MOSAIC and CARGILL to defraud the local utility companies, namely Pinellas County Utilities, municipalities, as well as the United States Government and its regulatory agencies with its fraudulent assays. LCI is located in Jacksonville, Florida and has conducted its affairs in the State of Florida at all material times.

13. Defendant, AMERICAN WATER WORKS ASSOCIATON (AWWA), has for decades "self-policed" the water treatment industry as a way to keep the Environmental Protection Agency and federal regulators away from asserting government control over aspects of their membership's business. Members of its business are CARGILL SUBSIDIARIES and now MOSAIC, and evidence demonstrates (Exhibits A-M) that AWWA gave its stamp of approval on obviously incomplete and fraudulent assays (falsely certified).

FIRST CAUSE OF ACTION

14. Relator re-alleges paragraphs 1-13 and incorporates them as if fully set forth by reference below.

6

15. PUBLIC HEALTH DENTAL PROGRAM administers the "Federal Preventive Services Block Grant" to ensure maintenance of optimal levels and reliable testing methodology, as well as providing technical assistance to water operators and consultations with design engineers". (Exhibit N). Hence, this entity either continued to unknowingly, knowingly, intentionally, or recklessly conspire with the aforementioned phosphate fertilizer companies to defraud the United States Government and keep secret the "flawed" contractual assays that it knew were occurring by not disclosing them to the Government, or they were negligent in monitoring the aforementioned phosphate fertilizer companies to aid in the fluoridation process (using fluorosilicic acid). It is the entity responsible for monitoring all existing fluoridation systems it helped bring about.

16. Furthermore, Relator believes, through acquired information, that employees in the Public Health Dental Program knew since the early 1990s, that it was against the best interests of Public Health and Safety to facilitate fluoridation programs. But despite the known hazardous dangers and risks of fluoridation (using fluorosilicic acid), the Program has continued to encourage fluoridation of communities. This is due to suggestive strategies the Program gave in a letter dated May 7, 1990 to a Mr. Herb Tolson, Director of Inner City Governmental Relations in St. Petersburg, Florida. The letter says there are several tactics to promote fluoridation success, namely: keep a low profile with little publicity and avoid referendums; approach community officials individually; wait until commissioners against fluoridation have left and their replacements favor it, etc. (Exhibit O).

7

## SECOND CAUSE OF ACTION

17. Relator re-alleges paragraphs 1-16 and incorporates them as if fully set forth by reference below.

18. Relator believes that MOSAIC, at the time that IMC GLOBAL and CARGILL merged to form MOSAIC in 2004, conspired to continue to knowingly, recklessly, and intentionally commit fraud due to not fulfilling their obligation of requirements for the contractual assays. As evidence demonstrates (Exhibits E,F, K, L, M), both Cargill subsidiaries and Mosaic purposefully left out of the Certificate of Analysis the calculations for amounts of lead, arsenic, and apparently chloride as well. Due to the omissions of these calculations, it is the belief that calculations of other chemical elements present in the fluorosilicic acid were also omitted. Additionally, the calculations for lead and arsenic are in parts per million (ppm) instead of milligrams per liter (mg/l), which is the unit of measurement used to determine compliance of maximum contaminant levels (MCL) under the Code of Federal Regulations. See 40 CFR 141.23, 141.62, 141.80 (2005). Although ppm is an appropriate unit of measurement for measuring vapors, the molecular weight needed to do the conversion of ppm to mg/l in order to check compliance is absent. Thus, Relator believe that CARGILL and MOSAIC deliberately made it so that no one but employees working for those companies would know whether or not compliance had been met.

19. Defendants CARGILL and MOSAIC, the Relator believe, committed fraud on the contractual assays because they knew that "fluorosilicic acid" was not safe.

8

a. First, the assays are not consistent in the chemicals tested for, which by their very omission, at the very least indicate intentional inadequate testing of a hazardous waste product (false certification).

b. Second, vendors that are selling the pollution concentrate (fluorosilicic acid) as a fluoridation agent use a broad disclaimer found on the Material Data Safety Sheet that states: "no responsibility can be assumed by vendor for any damage or injury resulting from abnormal use, from any failure to adhere to recommended practices, or from any hazards inherent to the product."

c. Third, The International Occupational Safety and Health Information Centre (CIS) Material Data Safety Sheet states the following about fluorosilicic acid: short-term exposure is corrosive to the eyes, the skin and the respiratory tract and inhalation may lead to lung oedema; and long-term or repeated exposure can lead to fluorosis of the bones and teeth.

d. Fourth, when fluorosilicic acid is mixed with chloramines (instead of chlorine), now used by Pinellas County Utilities, it can cause the lead solder in plumbing, commonly found in homes built prior to 1980, as well as the lead commonly found in older bronze plumbing fixtures, as well as the lead once commonly used in water pipes, to leach from those sources into the tap water at the faucet. With this last remark, note that since fluoridation has been introduced in Pinellas County (2004) and the City of St. Petersburg (prior to 2004), there's proof of no less than 18 confirmed lead poisoning cases in Pinellas County in children under age six, along with 1191 cases currently suspected, but not yet confirmed, per documents supplied by the Pinellas County Health Department.

e. Lastly, remember that Relator lives in a home built prior to the 1950s in Pinellas County.

9

20. MOSAIC and CARGILL knowingly, recklessly, and intentionally conspired with LCI to defraud the Government, local governments, municipalities, and local utilities by LCI purposely showing incomplete and fraudulent assays of CARGILL AND MOSAIC when LCI marketed the fluorosilicic product to various purchasers, such as Pinellas County Utilities, and federal agencies.

21. CARGILL and MOSAIC's motive for committing fraud was to keep the phosphate company from spending millions of dollars to safely dispose of one of its most toxic waste byproducts. Instead, these companies convinced the federal, state, and local entities that fluorosilicic acid was a cost-efficient, safe product to use for fluoridating water supplies. Fluorosilicic acid is composed of tetrafluorosiliciate gas and other species of fluorine gases captured in pollution scrubbers and concentrated into a 23% solution during wet process phosphate fertilizer manufacture. Generally, this acid is stored in outdoor cooling ponds before being shipped to artificially fluoridate drinking water.

22. Defendants MOSAIC AND CARGILL were unjustly enriched, to the damage of the Treasury of the United States, by producing assays that were grossly substandard to the contractual requirements of the assays as demonstrated by the aforementioned exhibits in number eighteen (#18) and the discussion in number 7 (#7).

10

## THIRD CAUSE OF ACTION

23. Relator re-alleges paragraphs 1-22 and incorporates them as if fully set forth by reference below.

24. Defendant LCI, it is believed by Relator, knowingly, recklessly, and intentionally conspired with MOSAIC and CARGILL to defraud the Government, local governments, municipalities, and local utilities by LCI purposely showing incomplete and fraudulent assays of CARGILL AND MOSAIC when LCI marketed the fluorosilicic product to various purchasers, such as Pinellas County Utilities with state and federal entities.

## FOURTH CAUSE OF ACTION

25. Relator re-alleges paragraphs 1-24 and incorporates them as if fully set forth by reference below.

26. Unjust enrichment of LCI to market substandard products and receiving the full value for these products that, in actuality, did not meet the contractual assay testing requirements, as would be needed to not fraudulently receive full market value of these products.

11

## FIFTH CAUSE OF ACTION

28. Relator re-alleges paragraphs 1-26 and incorporates them as if fully set forth by reference below.

29. Defendant, AMERICAN WATER WORKS ASSOCIATION (AWWA) has for decades "self-policed" the water treatment industry as a way to keep the Environmental Protection Agency and federal regulators away from asserting government control over aspects of their membership's business. Members of its business are CARGILL SUBSIDIARIES and now MOSAIC, and evidence demonstrates (Exhibits A-M) that AWWA gave its stamp of approval on obviously incomplete and fraudulent assays. Thus, it is believed that AWWA has been grossly incompetent and negligent in letting this fraudulent practice go on for the last two years.

30. Defendant, AWWA, it is believed by Relator, knowingly, intentionally, and recklessly conspired to not correct the obviously inadequate or lack thereof of testing done by CARGILL SUBSIDIARIES and MOSAIC, as you can see at the bottom of the Certificate of Analysis of the assays of CARGILL and MOSAIC that AWWA certifies that it meets their standard B703a-97 and ANSI/NSF Standard 60 Requirements when it clearly does not.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each Defendant as follows:

12

a. That by reason of the violations of the False Claims Act as set out in the First to Fifth Causes of Action, this Court enter judgment against Defendants in an amount equal to Three (3) times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. §3729;

b. That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act and/or any other applicable provision of law;

c. That Relator be awarded all costs of this action, including attorney's fees and Court costs; and

d. That Relator have such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

31. This is a claim under the Florida False Claims Act, Florida Statute 68.

32. Relator re-alleges paragraphs 1-30 and incorporates them as if fully set forth by reference below.

33. Defendants knowingly submitted false claims to various Florida state agencies as defined in Florida Statute 68.082.

34. These were accomplished by submitting, for example, inappropriately certified Certificates of Analysis on Truck Release number 20805406, dated August 12, 2004, in which the lead and arsenic percentages are not shown in the analysis.

13

35. As a result of this, Defendants have been unjustly enriched and the State and its entities have

been damaged as stated in Florida Statute 68 and its sub-parts.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each Defendant as follows:

a. For all damages as stated in Florida Statute 68, and for any unjust enrichment.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S.
Mail to the following with the original to the Clerk of Court this _25_ day of _May_ , 2006.:

Attorney General
U.S. Dept. of Justice
Washington, D.C. 20530

United States Attorney **(BY HAND DELIVERY)**

Middle District of Florida
Attn: Whitney Schmidt
Assistant U.S. Attorney
400 N. Tampa St. Suite 3200
Tampa, FL 33602

J. TROY ANDREWS, ESQ.
Florida Bar # 105635
JOHN W. ANDREWS, ESQ.
Florida Bar #178531
ANDREWS LAW GROUP
3220 Henderson Blvd.
Tampa, Florida 33609
Telephone: (813) 877-1867
Attorneys for Plaintiffs

14